UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA

| | |
|---|---|
| LISA F.[1], | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
|   v. | )   CIVIL NO. 2:21cv161 |
| | ) |
| KILOLO KIJAKAZI, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
|     Defendant. | ) |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) under Title II of the Social Security Act, 42 U.S.C. § 423(d). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based.  The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing."  It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. §405(g).

The law provides that an applicant for disability benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of no less than 12

---

[1] For privacy purposes, Plaintiff's full name will not be used in this Order.

months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A).  A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3).  It is not enough for a plaintiff to establish that an impairment exists.  It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity.  *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979).  It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff.  *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g).  "Substantial evidence is defined as 'more than a mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977).  "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after a hearing, the Administrative Law Judge ("ALJ") made the following findings:

    1.     The claimant meets the insured status requirements of the Social Security Act

      through December 31, 2021.

2. The claimant has not engaged in substantial gainful activity since February 1, 2019, the alleged onset date (20 CFR 404.1571 *et seq*.).

3. The claimant has the following severe impairments: a polysubstance abuse disorder, an affective/anxiety/attention and/or trauma related disorder(s), a headache disorder, and lumbar degenerative disc disease (20 CFR 404.1520(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant is limited to frequent climbing of ramps and stairs, balancing, stooping, kneeling, crouching, and/or crawling. The claimant can occasionally climb ladders, ropes, or scaffolds, and occasionally work at unprotected heights. The claimant can never work in bright sunlight or bright, flickering lights, such as would be experienced in welding or cutting metals and she is limited to working environments that have no more than a moderate noise level. The claimant can never interact with the general public, but can occasionally interact with co-workers and supervisors, and she can tolerate few changes in a routine work setting.

6. The claimant has no past relevant work (20 CFR 404.1565).

7. The claimant was born on April 9, 1985 and was 33 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 404.1568).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2019, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 15-25).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to benefits, leading to the present appeal.

Plaintiff filed her opening brief on December 13, 2021. On January 14, 2022 the defendant filed a memorandum in support of the Commissioner's decision to which Plaintiff replied on February 7, 2022. Upon full review of the record in this cause, this court is of the view that the Commissioner's decision should be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). In the present case, Step 5 was the determinative inquiry.

Plaintiff has been diagnosed with, *inter alia*, bipolar disorder, ADHD, OCD and polysubstance abuse. The following medical opinions are in evidence.

4

On August 21, 2019, non-examining State Agency medical consultant Joshua Eskonen, D.O., determined the following limitations: occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for a total of about 6 hours; sit for a total of about 6 hours; frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolds. (Tr. 123). Dr. Eskonen opined Plaintiff demonstrated the maximum sustained work capability to perform medium work. (Tr. 126-127).

On September 5, 2019, non-examining State Agency psychological consultant Amy S. Johnson, Ph.D., determined the following: mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitations in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. (Tr. 121). Dr. Johnson opined Plaintiff could: understand, remember, and carry out detailed, but not complex tasks: could relate on a superficial and ongoing basis with co-workers and supervisors; Plaintiff can attend to tasks for a sufficient period to complete tasks; could manage the stresses involved with detailed work-related tasks; manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded; work best alone, in semi-isolation from others or as part of a small group; and maintain at least a minimal level of relationship with others. (Tr. 125).

On December 16, 2019, non-examining State Agency medical consultant M. Brill, M.D., determined the following limitations: occasionally lift/carry 50 pounds; frequently lift/carry 25 pounds; stand/walk for a total of 6 hours; sit for a total of 6 hours; frequently climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and occasionally climb ladders, ropes, and scaffolds. (Tr. 138).

On December 17, 2019, non-examining State Agency psychological consultant William A. Shipley, Ph.D., determined the following: mild limitation in understanding, remembering, or applying information; moderate limitation in interacting with others; mild limitation in concentrating, persisting, or maintaining pace; and moderate limitation in adapting or managing oneself. (Tr. 136). Dr. Shipley opined Plaintiff could: understand, remember, and carry out detailed, but not complex tasks; can relate on a superficial and ongoing basis with co-workers and supervisors; can attend to tasks for a sufficient period to complete tasks; can manage the stresses involved with detailed work-related tasks; manage occasional contact with the public but sustained, intensive, interpersonal contact would be precluded; work best alone, in semi-isolation from others or as part of a small group; and maintain at least a minimal level of relationship with others. (Tr. 140-141).

On August 14, 2020, Michael Mirochna, M.D., completed a "Medical Source Statement" regarding Plaintiff's physical limitations. (Tr. 737). Dr. Mirochna noted Plaintiff's substance abuse was not the cause of Plaintiff's impairments. (Tr. 740). Dr. Mirochna opined the following limitations: sit for 5 hours in a work day; stand/walk for 1 hour in a work day; frequently lift/carry up to 10 pounds; occasionally lift/carry 11-20 pounds; never lift/carry more than 20 pounds; occasionally bend, squat, and reach above shoulder level; never crawl or climb; total restriction to unprotected heights and exposure to dust, fumes and/or gases; mild restriction to being around moving machinery and exposure to marked changes in temperature/humidity; would require frequent breaks to lie down in excess of the typical breaks allowed; and would frequently miss days unpredictably. (Tr. 740 -742).

On October 15, 2020, Marie M. Tamanji, NP, completed a "Medical Source Statement" in

relation to Plaintiff's mental limitations. (Tr. 785). NP Tamanji stated she had treated Plaintiff every 2 weeks since April 2019 and diagnosed Plaintiff with Bipolar I Disorder, PTSD, opioid use disorder, attention deficit hyperactivity disorder, and obsessive compulsive disorder. (Tr. 785). She noted Plaintiff had a fair prognosis as long as no stressors presented themselves as stressors could make Plaintiff mentally unstable. (Tr. 785). NP Tamanji noted that Plaintiff experienced dizziness, drowsiness, lethargy, insomnia, mood swings, manic episodes, nightmares and hallucinations as side effects from her medications. (Tr. 785).

      NP Tamanji opined Plaintiff was markedly limited in the ability to: remember locations and work-like procedures; understand and remember very short and simple instructions; understand and remember very long and detailed instructions; recognize and find solutions to problems in day-to-day life; carry out very short and simple instructions; carry out detailed instructions; maintain attention and concentration for extended periods; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; work in coordination with or proximity to others without being distracted by them; sustain an ordinary routine without special supervision; make simple work-related decisions; complete normal workday and workweek without interruptions form psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with general public; ask simple questions or request assistance; accept instructions and respond appropriately to criticism from supervisors; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; respond appropriately to changes in the work setting; travel in unfamiliar places or use public transportation; or set realistic goals or make plans independently of others. (Tr. 795-797).

NP Tamanji opined that, due to her mental impairments, Plaintiff had "extreme" functional limitations in: restriction of activities of daily living; difficulties in maintaining social functioning; and difficulties in maintaining concentration, persistence or pace. (Tr. 794).

NP Tamanji also opined that Plaintiff was not capable of working 8 hours a day, 5 days a week, and would likely be absent from work more than 4 days per month. (Tr. 798).

In support of remand, Plaintiff's only argument is that the ALJ failed to properly evaluate the opinion of NP Marie Tamanji, a treating medical source.

As Plaintiff's claim was filed after March 27, 2017, the "treating source rule" no longer applies and medical opinions are evaluated under new regulations. Under the new regulations, the ALJ will not defer or give any specific evidentiary weight to any medical opinion. Rather, the ALJ focuses on the persuasiveness of the medical opinion using five factors: supportability, consistency; relationship with the claimant; specialization; and other factors. 20 CFR § 404.1520c(a)-(c). The ALJ <u>must</u> explain in the decision how persuasive they find a medical opinion based on the first two factors, supportability and consistency. 20 CFR § 404.1529(b)(2).The ALJ <u>may</u>, but is not required, to explain how they considered the other remaining factors, unless the ALJ finds that two or more medical opinions about the same issue are both equally well-supported and consistent with the record, but not identical. 20 CFR 404.1520c(b)(3).

In her "Medical Source Statement", NP Tamanji opined that Plaintiff was markedly or extremely limited in nearly every aspect of life. (Tr. 785-98). She also specifically found that Plaintiff has a "[c]urrent history of 1 or more years' inability to function outside a highly supportive living arrangement with an indication of continued need for such an arrangement."

8

(Tr. 793). NP Tamanji further opined that Plaintiff has "[a]n anxiety related disorder and complete inability to function independently outside the area of one's home." In regards to NP Tamanji's opinion, the ALJ held:

> There was also that [medical source statement] of the nurse practitioner [Tamanji] (see generally Exhibit B20F). The undersigned was not persuaded by this as the individual described in this assessment was so dysfunctional that the person would require a supported living environment, which is not the case here. In fact, to the contrary, the clinical records confirmed that she was independent in her activities of daily living, driving, and caring for her child and a disabled family member as noted above. There was also no proof of audio/visual hallucinations, ongoing decompensatory events related to symptomatology instead of polysubstance abuse. Thus, this opinion was not consistent with the longitudinal record.

(Tr. 24).

Plaintiff claims that the ALJ failed to cite to any evidence in his evaluation, and claims that the required "logical bridge" was not built, leaving this Court with the inability to give a meaningful review. Plaintiff also claims that the ALJ failed to comply with 20 CFR §404.1520c, by not explaining how he evaluated supportability and consistency of NP Tamanji's opinion.

Although the ALJ did not cite to evidence by exhibit number (other than NP Tamanji's opinion at Exhibit B20F), he did refer to clinical records which confirmed that Plaintiff was independent. Additionally, in earlier portions of the decision, the ALJ discussed Plaintiff's limitations in her ability to manage herself, which includes citations to the record:

> Finally, the claimant has no more than moderate limitations in her ability to adapt or manage herself, which remaining consistent with the prior areas, was consistent with the moderate limitations assessed by the State agency psychological consultants (see generally Exhibits B2A, B4A). The claimant asserted that she has difficulties managing her mood. That said, the claimant also stated that she is able to handle self-care and personal hygiene, care for pets and farm animals, care for her daughter and brother-in-law that was afflicted with a traumatic brain injury (TBI) (see generally Exhibit B22F), all while evidencing no ongoing issues getting along with her caregivers. Moreover, the objective evidence in the record showed

>the claimant to have appropriate grooming and hygiene, no problem getting along well with providers and staff when compliant with treatment presenting with a stable mood and affect, and no chronic problems with temper control. Based upon this, no more than moderate limitations were supported.

(Tr. 18; *see also* Tr. 22, where the ALJ discusses Exhibit B22F and notes that Plaintiff confirmed that she was the primary caregiver for her injured brother-in-law, and that she cared for farm animals, pets and her child(ren)). Thus, taken as a whole, the ALJ's decision is clear enough to enable review and also complied with 20 CFR §404.1520c. The ALJ explained that NP Tamanji's opinion was neither supported by, nor consistent with, the other record evidence. Thus there is no basis for remand on this point.

Plaintiff also asserts that the ALJ's conclusion that a person with the limitations described by NP Tamanji would require a "supported living environment" is an impermissible lay medical opinion. However, as noted above, NP Tamanji did, in fact, state that Plaintiff would need to continue to live in a highly supportive living environment and had the complete inability to function independently outside the home. (Tr. 793). Thus, the ALJ did not insert her own lay medical opinion into the analysis and there is no basis for remand on this issue.

## Conclusion

On the basis of the foregoing, the Decision of the Commissioner is hereby AFFIRMED.

Entered: February 16, 2022.

s/ William C. Lee
William C. Lee, Judge
United States District Court
